UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                      Case No. 25-CR-20735

v.

                                  F. Kay Behm

JERRY MCCLAIN              United States District Judge

      Defendant.

_____/

**OPINION AND ORDER DENYING MOTION TO SUPPRESS
AND REQUEST FOR A *FRANKS* HEARING (ECF No. 20)**

## I.    PROCEDURAL HISTORY

Police executed a search warrant at Jerry McClain's home where they seized various quantities of narcotics, three firearms, and nearly $45,000 in cash.  The grand jury returned an indictment charging McClain with possession of a firearm in furtherance of a drug-trafficking crime; possession with intent to distribute methamphetamine, fentanyl, heroin, cocaine base, and MDMA; and felon in possession of a firearm.  (ECF No. 15).  McClain filed a motion to suppress challenging the search warrant.  (ECF No. 20).  He also requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), contending that the warrant application contains material falsehoods.  *Id*.

1

The government filed a response on December 8, 2025.  (ECF No. 23).  The

court held a hearing on January 29, 2026.  For the reasons set forth below,

Defendant's motion is **DENIED**.

## II.    FACTUAL BACKGROUND

Communications with a confidential informant lead law enforcement

officers with the Flint Area Narcotics Group (FANG) to investigate Jerry

McClain for drug trafficking.  Eventually, Detective Nick Jones applied for and

received a search warrant for McClain's residence from Magistrate Helen

Davis of the State of Michigan – 67th Judicial District Court.  In the affidavit

supporting the warrant application, Detective Jones attested to

the following facts:

- The confidential informant, referred to in the affidavit as XX, is reliable

  and credible because XX had conducted successful police-monitored

  controlled purchases of narcotics in the past and XX had never provided

  Jones with any false or misleading information in the past.  (ECF No. 23-

  2, ¶¶ 5-6).

- XX told Jones that XX could purchase crystal methamphetamine from a

  person known to them as "Jay." XX provided a physical description of

Jay and Jones subsequently identified Jay as McClain and determined that McClain lives at a specific address Thom Street.  (*Id.*, ¶ 7).

- On a date prior to applying for the search warrant, FANG detectives conducted surveillance on the Thom Street residence and observed McClain arrive at the residence in a vehicle, park in the driveway, and enter the home where he stayed for approximately seven minutes before leaving.  Jones, relying on his 10 years of experience in narcotics investigations, concluded that this "short stay" was consistent with narcotics sales.  (*Id.*, ¶¶ 1-3, 8).

- Within 48 hours of applying for the search warrant, FANG detectives conducted additional surveillance on the Thom Street residence. Thereafter, Detective Miller met with and searched XX for drugs, money, and contraband.  Miller found none.  Jones then provided XX with a quantity of pre-recorded currency.  XX contacted Moultrie[1] to arrange the purchase of a quantity of crystal methamphetamine.  (*Id.*, ¶ 9).

- Detective Newman maintained surveillance on the Thom Street residence and observed McClain arrive in a vehicle and enter the home.

---

[1] The government maintains that the reference to Moultrie is a typographical error while Defendant maintains that this is a material falsehood.

3

McClain left the residence after approximately five minutes.  FANG detectives continued to surveil McClain as he drove to a business on N. Dort Highway (a distance of less than one mile – Exhibit 2).  (Exhibit 1, ¶ 10).

- XX left the location where XX met with detectives Miller and Jones while Jones and other FANG detectives observed XX go to the business on N. Dort Highway.  While at the business, FANG officers observed XX meet with McClain where XX purchased crystal methamphetamine from McClain.  (*Id.*, ¶ 11).

- FANG detectives continued their surveillance of McClain after the controlled purchase and observed him drive directly to the residence on Thom Street where he pulled into the driveway and entered the home. (Id., ¶ 12).

- Jones maintained surveillance on XX as XX left the N. Dort Highway business and returned to the initial meet location.  XX gave Jones a quantity of crystal methamphetamine, which XX stated he/she purchased from McClain.  Based on Jones' training and experience, the quantity of methamphetamine obtained from McClain appeared to be

4

- commensurate with the amount of money provided to XX for the controlled purchase.  (*Id.*, ¶ 13).

- Jones searched XX for narcotics and money and found none. Jones noted that he and other FANG detectives had maintained continuous surveillance on XX as XX left the meet location, met with McClain at the N. Dort Highway business, and then returned to the meet location. (Id., ¶ 14).

- Jones tested the suspected crystal methamphetamine with a TruNarc instrument and received a positive indication of methamphetamine. (*Id.*, ¶ 15).

On March 20, 2025—the same day Jones obtained the search warrant—FANG officers executed the search warrant on the Thom Street address. The officers found McClain asleep in the northwest bedroom of the residence. Inside the home, the officers seized, among other items, three semi-automatic pistols, large quantities of various narcotics, a digital scale, and $44,988 of suspected cash proceeds from drug sales.

## III.   ANALYSIS

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause...." U.S. Const. amend. IV.  "Probable cause is defined

as 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *United States v. King,* 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990)).  When reviewing an affidavit for a search warrant, a judge must make a "practical, common-sense decision" based on all the circumstances, including the veracity and basis of knowledge of individuals providing hearsay information, to determine if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The judge must also determine that a nexus exists between the evidence sought and the place to be searched.  *United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013).  The inference that evidence of drug trafficking will be found at the residence of a person who is engaged in drug trafficking may go toward establishing a sufficient nexus.  *See United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009).

A judge's decision to issue a warrant is afforded great deference.  *See United States v. Kenny*, 505 F.3d 458, 460–61 (6th Cir. 2007).  When such a decision is challenged by the defendant, the reviewing court looks only to the four corners of the affidavit to determine if there was probable cause.  *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v.*

*Pinson,* 321 F.3d 558, 565 (6th Cir. 2003)).  A decision to issue a warrant should only be reversed if the judge arbitrarily exercised his or her discretion. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (*en banc*).  A line-by-line approach to scrutinizing an underlying affidavit is therefore inappropriate; the reviewing court should determine simply whether the judge had a "substantial basis" for concluding that a search would "uncover evidence of wrongdoing."  *Id*. (quoting *Gates*, 462 U.S. at 236).

Furthermore, there is "a presumption of validity with respect to the affidavit supporting the search warrant."  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  But "a search warrant is invalid when the supporting affidavit contains a statement, necessary to the finding of probable cause, that is later demonstrated to be false and included by an affiant knowingly and intentionally, or with a reckless disregard for the truth."  *United States v. Duval*, 742 F.3d 246, 250 (6th Cir. 2014) (citing *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674).  *Franks* also applies to cases where an affiant intentionally omitted information in an affidavit, which is critical to the probable cause determination.  *Id.*  A defendant may request an evidentiary *Franks* hearing if he "raises a substantial question as to whether the affidavit supporting the search warrant contained materially false information."  *United States v.*

7

*Caldwell*, 114 F. App'x 178, 181 (6th Cir. 2004) (citing *Franks*, 438 U.S. at 156).

This requires making a "substantial preliminary showing" of knowing or

reckless falsity. *Id*. at 182. If the defendant is able to show deliberate falsity

or reckless disregard for the truth, those portions of the affidavit are set aside,

and the remaining content is analyzed to determine if it supports probable

cause. *Franks*, 438 U.S. at 171–72. Thus, the offending information must be

essential to a probable cause finding. *Id*. Innocent or negligent mistakes are

not enough. *Id*. at 171.

    A.    <u>McClain Has Not Shown Entitlement to a *Franks* Hearing</u>

Under *Franks*, a defendant is entitled to a hearing on the veracity of a

search warrant affidavit "if he makes specific allegations of deliberate

falsehood or reckless disregard for the truth on the part of the affiant [ ] and

supports the[ ] allegations with an offer of proof." *United States v. Marlowe*,

993 F.2d 1548 (6th Cir. 1993). "The offer of proof" a defendant must proffer

"must consist of affidavits or 'otherwise reliable statements' that support the

contention that the affiant deliberately or recklessly falsified information in

the affidavit." *Id*. at 1548 (quoting *Franks*, 438 U.S. at 171). "If the defendant

does not produce such sworn or reliable statements, their absence must be

satisfactorily explained." *Id*. In evaluating search warrant affidavits, courts

8

begin with a "presumption of validity," and "[a] defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *Franks*, 438 U.S. at 171; *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (noting that a defendant must "make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement," to be entitled to a *Franks* hearing).

McClain points to a single instance in the Jones affidavit as reason to hold a *Franks* hearing.  (ECF No. 20, PageID.47).  Specifically, McClain notes that the affidavit states that after Jones provided XX with pre-recorded currency for the controlled purchase, XX contacted "Moultrie" (not McClain) to arrange the purchase of drugs.  *Id*.  McClain believes that this single error, which the government describes as a typographical error, amounts to a deliberate falsehood or a reckless disregard for the truth.

According to the government, a typographical error such as the one McClain takes issue with does not show that Detective Jones either intentionally or recklessly included false information.  Instead, the government maintains that it is clear from the context of the rest of the affidavit that Detective Jones meant McClain where he indicated Moultrie. And such a technical error is merely demonstrative of the reality that search

9

warrant applications "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Brooks*, 594 F.3d 488, 491 (6th Cir. 2010). Ultimately, "[w]hat matters is the information contained in the affidavit," and, according to the government, the purported typographical error McClain cites does not establish a substantial preliminary showing that Detective Jones intentionally or recklessly included false information. *Id*.; *see also United States v. Hill*, 705 F. Supp. 3d 811, 819–20 (E.D. Mich. 2023) (denying request for a *Franks* hearing where the defendant offered "little other than minor typographical errors to support his accusations of falsehoods[.]"); *United States v. Frazier*, 423 F.3d 526, 539 (6th Cir. 2005) ("A defendant cannot demonstrate entitlement to a *Franks* hearing by merely identifying typographical errors in the affidavit."). On this record, the court cannot say one way or another whether the misnomer is a mere typographical error. But that does not end the court's analysis.

As explained above, to obtain a *Franks* hearing, the movant must provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth. Even assuming that Defendant has done so here, "[t]he movant must *also* show that the allegedly false statements were necessary for the magistrate's

10

determination of probable cause." *United States v. Mastromatteo*, 538 F.3d

535, 545 (6th Cir. 2008) (emphasis in original).  Therefore, "if, when material

that is the subject of the alleged falsity or reckless disregard is set to one side,

there remains sufficient content in the warrant affidavit to support a finding of

probable cause, no hearing is required." *Franks*, 438 U.S. at 171–72 (footnote

omitted).  What remains of the affidavit establishes probable cause if it

"provide[s] the magistrate judge with a basis for finding there was a fair

probability that contraband or evidence of a crime would be found at" the

stated location.  *Mastromatteo*, 538 F.3d at 545 (quoting *United States v.*

*Graham*, 275 F.3d 490, 504 (6th Cir. 2001)).  As discussed in detail below, the

warrant here still contains sufficient support for probable cause even

disregarding the sentence in Paragraph 9 with the purported typographical

error in it.

   "Probable cause exists to search a residence if an affidavit directly

connects the residence with the suspected drug dealing activity." *United*

*States v. Sheckles*, 996 F.3d 330, 341 (6th Cir. 2021) (quotations and

alterations omitted).  "Evidence that one leaves a 'residence, engage[s] in a

drug transaction, and then return[s] into the residence' 'plainly

11

demonstrate[s] a sufficient nexus' with the location." *United States v. Sanders*, 106 F.4th 455, 463 (6th Cir. 2024) (citations omitted).  And only a single instance of a defendant leaving a residence, completing a drug transaction, and returning to that residence is sufficient for a finding of probable cause.  *United States v. Florence*, 2025 WL 2539022, at *2 n.1 & *3 (6th Cir. Sept. 4, 2025) (noting that in *Sanders*, "the officers' observation of [the defendant] leaving his residence, completing a single drug transaction, and returning to a residence was enough for the *Sanders* court to find probable cause to search that residence" (citing *Sanders*, 106 F.4th at 463)).

Under the totality of the circumstances, the affidavit overcomes the "low bar" of probable cause, even not considering the sentence in Paragraph 9 with the purported typographical error.  *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021).  The affidavit set forth Jones' training and experience in narcotics investigations and contained information about McClain's drug trafficking from a known confidential informant, XX, deemed reliable and credible based upon past successful police-monitored controlled purchases. The affidavit corroborated XX's identification of McClain and his residence and included officers' observation of a "short stay" at McClain's residence, which Jones concluded is consistent with drug trafficking.  And, most

12

critically, the affidavit detailed a controlled purchase between XX and McClain immediately after McClain left his residence, and where McClain returned immediately afterward. Collectively, this information demonstrated a fair probability that evidence of drug trafficking would be found at McClain's residence. Officers observed McClain leave his home, get in his car, sell drugs to XX, and then return home. As held in *Sanders*, that alone "plainly" sufficed for probable cause. *Sanders*, 106 F.4th at 463.

McClain also contends that because Jones' affidavit failed to state whether XX's vehicle was searched in conjunction with the controlled purchase, XX's credibility is damaged to the extent that it renders the search warrant unsupported by probable cause. (ECF 20, PageID.47). But McClain cites no authority for the proposition that that step must be taken for a controlled purchase to form a basis for a finding of probable cause, nor does McClain explain any specific need for such step under the circumstances of this case. As the government points out, taking that additional step and disclosing it to the magistrate judge would have buttressed the other information contained in the affidavit, but the failure to do so is not fatal. "The affidavit is judged on the adequacy of what it does contain, not on what it lacks or on what a critic might say should have been added." *United States v.*

13

*Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (*en banc*).  The court finds that it was sufficient for Jones to describe the sequence of events and explain that XX had been searched both before and after the controlled purchase without finding any unauthorized money or contraband.  *See United States v. Pusey*, 189 F. App'x 475, 480 (6th Cir. 2006) (finding search warrant sufficient to support probable cause where police searched confidential informant's mouth and pockets in conjunction with controlled purchases but failed to search the informant's body cavities or record the buys).

> B. The Evidence Seized Falls with the Scope of the *Leon* Good Faith Exception to the Exclusionary Rule

Even if the warrant were found to be invalid, the good faith exception to the exclusionary rule applies.  "[J]udicial suppression is inappropriate when an officer conducts a search in 'objectively reasonable reliance' on a warrant later deemed to be invalid."  *United States v. Neal*, 106 F.4th 568, 572 (6th Cir. 2024) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).  However, the exclusion of evidence is not automatic; instead, the court asks whether exclusion will provide "appreciable deterrence").  *United States v. Herring*, 555 U.S. 135, 141–42 (2009).  This is because "[p]enalizing the officer for the [judge's] error, rather than his own, cannot logically contribute to the

14

deterrence of Fourth Amendment violations." *United States v. White*, 874

F.3d 490, 505–06 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 921); *see also*

*Neal*, 106 F.4th at 572 (observing that when the affidavit lacks probable

cause, "the authorizing judge—not the officer—is the blameworthy party").

The "good-faith inquiry is confined to the objectively ascertainable

question whether a reasonably well[-]trained officer would have known that

the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S.

at 922 n.23.  "Some modicum of evidence, however slight[,] between the

criminal activity at issue and the place to be searched" will support an

officer's good-faith belief in the existence of probable cause.  *United States v.*

*McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quoting *White*, 874 F.3d at 496).

Thus, only when the affidavit is "so lacking in indicia of probable cause as to

render official belief in its existence entirely unreasonable" will the search fall

outside the good-faith exception and the evidence be suppressed.  *Neal*, 106

F.4th at 572 (quoting *Leon*, 468 U.S. at 923).

A court's "good-faith inquiry is confined to the objectively ascertainable

question whether a reasonably well trained officer would have known that the

search was illegal" in light of "all of the circumstances."  *Herring v. United*

*States*, 555 U.S. 135, 145 (2009).  Jones' affidavit in support of the warrant is

15

not "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Norey*, 31 F.4th 631, 636 (8th Cir. 2022) (quoting *Leon*, 468 U.S. at 923).  More specifically, Detective Jones' affidavit provided evidence of a connection between McClain, the residence on Thom Street, and drug trafficking.  XX told Jones that he could purchase crystal methamphetamine from a person known to XX as "Jay." (ECF 23-2, ¶ 7).  Jones subsequently identified Jay as McClain and determined that he lived at a specific address on Thom Street.  Before applying for the search warrant, FANG detectives conducted surveillance on the Thom Street residence and observed McClain arrive at the residence, stay for approximately seven minutes before leaving, which Jones concluded, based on his 10 years of experience in narcotics investigations, was consistent with narcotics sales.  *Id.* at ¶¶ 1-3, 7.  FANG detectives conducted additional surveillance at the Thom Street residence after which Detective Miller met with and search XX for drugs, money and contraband, of which he found none.  Detective Newman maintained surveillance on the Thom Street residence and observed McClain enter the home and leave after five minutes.  Detectives continued to surveil McClain as he drove to a business on N. Dort Highway.  *Id*. at ¶ 10.  XX left the location where he met with Miller and Jones

16

while Jones and other FANG detectives observed XX go to the business on N. Dort Highway.  FANG officers observed XX meet with McClain at the business where XX purchased crystal methamphetamine from McClain.  *Id.* at ¶ 11. FANG detectives continued their surveillance of McClain after the controlled purchase and observed him pull into the driveway of the Thom Street residence and enter the home.  *Id.* at ¶ 12.  Jones maintained surveillance on XX as XX left the N. Dort Highway business and returned to the initial meeting location.  XX gave Jones a quantity of crystal methamphetamine, which XX stated they had purchased from McClain.  *Id*. at ¶ 13.  Jones searched XX for narcotics and money and found none.  *Id*. at ¶ 14.  Jones tested the suspected drugs purchased by XX and received a positive result for methamphetamine. *Id*. at ¶ 15.  Accordingly, this is not a case where the affidavit is "completely devoid of any nexus between" the illegal activity and the place to be searched or the item to be seized, *United States v. Carpenter*, 360 F.3d 591, 595–96 (6th Cir. 2004), nor does it "nakedly assume or vaguely conclude, without attempting to demonstrate why, probable cause has been satisfied," *Sanders*, 106 F.4th at 469 (citations omitted).

These connections between McClain, the drug activity, and the Thom Residence provide at least a "minimally sufficient nexus" to support the

executing officers' good faith reliance on the search warrant.  *See Neal,* 106 F.4th at 573 (affirming application of the good-faith exception when the affidavit demonstrated defendant lived at the residence, was recently dealing a large quantity of drugs per a reliable confidential informant and engaged in a single controlled buy).  Thus, if Detective Jones' affidavit were found to be deficient in establishing a probable cause, then the evidence seized in the execution of the search warrant still must not be suppressed because it falls within the good faith exception found in *Leon*.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion is **DENIED**.

**SO ORDERED**.

Date: February 26, 2026                         s/F. Kay Behm
                                                F. Kay Behm
                                                United States District Judge

18